IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRISHA K. REICHERT : |
|     Plaintiff, | |
| | CIVIL ACTION |
| v. : | NO. 14-6601 |
| | |
| CAROLYN W. COLVIN | |
|     Defendant. : | |

**MEMORANDUM**

Jones, II   J.                                                                                   January 22, 2016

## I. INTRODUCTION

Plaintiff commenced the within action after being denied Supplemental Social Security Income Benefits (SSI) and Disability Insurance Benefits (DIB). Upon review by United States Magistrate Judge Richard A. Lloret, a Report and Recommendation (R&R) was issued affirming the Administrative Law Judge's (ALJ) denial of said benefits. Plaintiff has filed Objections to the R&R, which are now before this Court for review. For the reasons set forth hereinbelow, Plaintiff's Objections shall be denied and the R&R shall be approved and adopted.

## II. FACTUAL AND PROCEDURAL HISTORY

### a. Factual History

On January 19, 2012, Plaintiff filed for disability benefits, claiming bipolar disorder and depression prevented her from maintaining employment. (R. 15.) Plaintiff's medical condition was thoroughly documented in notes prepared by several medical professionals. These treatment notes will be detailed as needed throughout, but can be summarized as follows.

April Faust, Plaintiff's social worker, monitored Plaintiff's condition, mood, and response to treatment, and indicated in her notes that in Ms. Faust's opinion, Plaintiff had severe impairments in many facets of her life due to her condition and the side-effects of her medication. (R. 475-503, 506-29.)  Dr. Donald Masey also met with Plaintiff and found moderate impairments in several areas, analyzed her cognitive abilities, and detailed several ways that both Plaintiff and her employers could cope with her issues. (R. 395.) Lastly, Dr. Sandra Banks, a government doctor, reviewed Plaintiff's medical records and concluded that she was not disabled. (R. 104-12.)

Plaintiff last worked in May 2012. (R. 67.)  At her previous job, she was a part-time teaching assistant for a childcare center. (R. 68.)  Her job duties included supervising and reading to toddlers, and assisting them with both lunch and naps. (R. 68.)  Plaintiff first lost this job in February 2011, when she was hospitalized for an onset of manic symptoms. (R. 44, 50.)[1] Plaintiff returned to this job briefly in May 2012, but was again let go as a result of tardiness. (R. 15, 53-54.)

With regard to Plaintiff's home life, she currently lives with her boyfriend. (R. 48.) Her daily activities include completing household chores, attending Bible study, driving, shopping, walking, playing volleyball, seeing friends and family, and playing cards with her boyfriend. (R. 59, 61, 71, 330-32.)

---

[1] Plaintiff testified that the hospitalization occurred at a time when she "was going out to bars . . . drinking . . . doing drugs . . . I would have racing thoughts.  I would be like really - - real highs and then go to real lows."  (R. 57.)  Her parents similarly informed consultants at the Reading Hospital and Medical Center that Plaintiff had been going to bars in the middle of the night, drank and drove, and tended to engage in substance abuse when she was with her friends.  (R. 582.)

### b. Procedural History

On June 27, 2013, Plaintiff's application was denied by the ALJ. (R. 26.) She was found to have bipolar disorder, mild mental retardation, a learning disorder, and drug and alcohol abuse (in remission). (R. 17.) These conditions however, did not meet the Social Security Administration's requirements for disability. (R. 26.) Additionally, the ALJ found that Plaintiff could perform:

> [S]imple routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes and no work at fixed production pace. She could occasionally interact with the general public, but must have no requirements to read instructions or write reports.

(R. 20.)

On March 11, 2015, Plaintiff appealed this ruling, alleging the ALJ: (1) erred in the disability analysis, (2) did not properly evaluate the opinion evidence, (3) made a finding regarding Plaintiff's credibility without support from substantial evidence, and (4) made a finding regarding Plaintiff's Residual Functional Capacity (RFC) without support from substantial evidence. (Pl.'s Br. & Stmt. Issues Supp. Req. Review 2, ECF No. 8.) This Court referred the matter to United States Magistrate Judge Richard A. Lloret, who reviewed the case and has recommended denying the appeal, finding no error in the ALJ's decision. Plaintiff objected to this recommendation, asserting the same arguments set forth in the original appeal. (Pl.'s Objs. 1, ECF. No. 15.)

### III.   STANDARD OF REVIEW

Objections to an R&R are entitled to de novo review. 28 U.S.C. § 636(b)(1)(C). However, the review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial

evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). In determining the existence of substantial evidence to support an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in her decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

With specific regard to the ALJ's assessment of a plaintiff's claim,

> In order to qualify as disabled, and thus be entitled to benefits, a claimant must demonstrate that "there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period."  A claimant is deemed unable to engage in any substantial gainful activity "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" In reviewing claims for disability benefits, an ALJ performs a five-step analysis to determine whether a claimant is disabled.

*Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 503 (3d Cir. 2005) (internal citations omitted).

In performing the "five-step sequential evaluation," the ALJ . . .

> [M]ust decide: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the claimant can perform any other work which exists in the national economy, in light of the claimant's age, education, work experience, and residual functional capacity.  The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled.

*Rios v. Comm'r of Soc. Sec.*, 444 F. App'x 532, 534 (3d Cir. 2011) (citing § 404.1520(a)(4)) .

A claimant bears the burden of proving Steps 1 through 4 by substantial evidence. At Step 5, the burden shifts to the Commissioner. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Accordingly, this Court shall review Plaintiff's Objections in the context of the foregoing analytic process.

## IV. DISCUSSION

### A. Substantial Evidence Supports the ALJ's Step 3 Finding that Reichert Was Not Disabled

Plaintiff first claims there is no substantial evidence to support the ALJ's Step 3 findings. Under the third step of the disability analysis, a claimant will be found to be disabled if they meet one of the conditions listed by the Commissioner that are presumed severe enough to prevent the claimant from doing any gainful work. *Burnett v. Comm. Soc. Sec. Admin.*, 220 F.3d 112, 118 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Qualified impairments under the listing include affective disorders and intellectual disabilities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04-05.  Here, substantial evidence demonstrates that Plaintiff failed to satisfy either of these listings.

#### 1. Plaintiff Does Not Meet Requirements for Affective Disorders Under Listing 12.04

To satisfy the requirements of 12.04, a claimant must meet two criteria. First, medical documentation must establish the existence of at least four symptoms related to a disorder. *Id.* at 12.04(A).  Second, the identified symptoms must result in at least two of the following circumstances: (1) marked restriction of daily living activities, (2) marked difficulty in social function, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4)

repeated extended duration episodes of decompensation. *Id.* at 12.04(B). A marked restriction standard "may arise when several activities or functions are impaired or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* at 12.00(C). In this case, Plaintiff's ability to function socially and her concentration, persistence and pace were at issue.

### a. Substantial Evidence Supports the ALJ's Finding of Moderate Impairment in Social Functioning

Social functioning is evaluated based on the claimant's ability "to 'interact independently, appropriately, effectively and on a sustained basis with other individuals' including 'the ability to get along with others, such as family members [or] friends.'" *Holmes v. Barnhart*, 118 Soc. Sec. Rep. Service 661, 2007 U.S. Dist. LEXIS 21769, at *27 (E.D. Pa. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2)). Weaknesses in this area can be shown by a history of "altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Oliva v. Astrue*, Civ. No. 10-2616, 2011 U.S. Dist. LEXIS 98267, at *7 (E.D. Pa. 2011) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00). Strengths can be based on the claimant's ability to initiate social contacts with others, their ability to communicate clearly, or participation in group activities. *Pounds v. Astrue*, 772 F. Supp. 2d 713, 728 (W.D. Pa. 2011) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00).

Substantial evidence supports the ALJ's finding that Plaintiff has no marked impairment of social function. First, according to Dr. Masey, Plaintiff's personality was similar to profiles that are "outgoing" and "friendly." (R. at 393.) Dr. Masey noted that people with Plaintiff's profile have interpersonal relationships that are "well-maintained." (R. at 393.) Additionally, according to a daily activities questionnaire filled out by Plaintiff, she attends Bible study, plays

cards and volleyball, attends picnics, allows family members to visit and travels to visit friends. (R. at 330-32.)

Plaintiff puts forth two reasons why she believes the ALJ erred. First, she cites to the March 10, 2011 psychiatric evaluation which indicated that Plaintiff had experienced racing thoughts, pressured speech, and occasional rage attacks. (Pl.'s Objs. 2, ECF. No. 15) (citing Adm. R. 442). While these issues do show the presence of some impairment, Plaintiff has put forth no evidence to demonstrate how they seriously interfere with her ability to function appropriately, effectively, and on a sustained basis in social settings. Second, Plaintiff places significant weight on the opinion of Ms. Faust. (Pl.'s Objs. 2, ECF. No. 15.) However, as discussed in detail below, Ms. Faust's opinions are not entitled to controlling weight.

### b. Substantial Evidence Supports the ALJ's Finding of Moderate Impairment in Concentration, Persistence and Pace

Concentration, persistence and pace are evaluated based on the claimant's "ability to sustain focused attention and concentration sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings." *Pounds*, 772 F. Supp.2d at 729 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3)). While the ability is best evaluated in a work setting, limits in other areas of the claimant's life are also relevant. *Id.* Limits to these functions can be assessed with clinical or psychological testing, but that data should be supplemented by other evidence if possible. *Id.*

Plaintiff alleges that her limits were not moderate for several reasons—none of which change the fact that the ALJ's findings are supported by substantial evidence. Dr. Masey's examination of Plaintiff indicated that she had only a mild to moderate impairment in her attention, concentration, cognitive processing speed, planning and organizational skills. (R.

404).[2] This finding is supplemented by Plaintiff's own actions. (R. 19.)  As noted by both the ALJ and the Magistrate Judge, Plaintiff reads and plays cards; two activities that require significant focus. (R. 19.) As such, substantial evidence supports the ALJ's finding that Plaintiff has only a moderate impairment to her concentration, persistence and pace.

### 2. Plaintiff Does Not Meet Requirements for Intellectual Disabilities Under Listing 12.05

Listing 12.05 relates to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *Markle v. Barnhart*, 324 F.3d 182, 184 (3d Cir. 2003) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05C). A disability can be found from the presence of one of several circumstances, including where the claimant has "[a] verbal, performance or full scale IQ of 60 through 70, and a physical or other mental impairment imposing additional and significant limitation of function." *Id.*  An ALJ is not required to accept an IQ score if it is inconsistent with the record. *Id.* at 187.

The rejection of an IQ score will be upheld when supported by medical opinion. *Id.* at 187. In *Markle*, an ALJ rejected a claimant's 70 IQ score based upon the claimant's "ability to pay his own bills, add and subtract, use an ATM machine and to take care of all his own personal needs; [Claimant's] ability to identify and administer his medication; his previous jobs; obtaining a GED; and … positive evaluations…." *Id.* at 183, 186. This reasoning was rejected on appeal, however, as it was based on the ALJ's personal observations of the individual and the speculative conclusions the ALJ had drawn from the record. *Id.* at 187. Without an expert opinion from a psychologist or medical professional to contradict the score, the rejection was improper. *Id.*

---

[2]   This Court also remains mindful of the fact that Plaintiff's terminations from employment were primarily based upon her absences and late arrivals to work, as opposed to her performance while at work. (R. 51.)

Here, substantial evidence supports the ALJ's rejection of Plaintiff's IQ score. As stated by both the ALJ and the Magistrate Judge, Dr. Banks reviewed Plaintiff's scores and observed that they indicated the presence of a learning disability, not an intellectual disability. (R. 106.) Additionally, one of the doctors who treated Plaintiff while she was hospitalized was not convinced that Plaintiff actually had a low intellectual function. (R. 568.) Because the ALJ's findings were supported by the opinions of these professionals, she was free to discount the IQ score.

### B. Substantial Evidence Supports the ALJ's Evaluation of Dr. Banks' and Ms. Faust's Opinion Evidence

Evidence from an acceptable medical source is required to establish an impairment. 20 C.F.R. § 404.1513(a). Said sources "include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech language pathologists." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 878 (3d Cir. 2005) (citing 20 C.F.R. § 404.1513(a)). There are three types of acceptable sources: 1) treating sources, 2) non-treating sources, and 3) non-examining sources. *Ortiz v. Colvin*, Civ. No. 14-1457, 2015 U.S. Dist. LEXIS 120608, at *17 n.2 (M.D. Pa. July 31, 2015) (citing § 404.1513). Treating sources are a claimant's own physician, psychologist, or other acceptable medical source that has provided the claimant with medical treatment and has, or had, an ongoing treatment relationship. *Id.* Non-treating sources are physicians, psychologists or other acceptable medical sources that examined the claimant, but do not have an ongoing treatment relationship with them. *Id.* Non-examining sources are physicians, psychologists, or other acceptable medical sources that have not examined the claimant, but provide a medical opinion about the case. *Id.*

Medical opinions from a claimant's treating source are *generally* given controlling weight. 20 C.F.R. § 404.1527(d)(2). If evidence is lacking from a treating source, an ALJ has a duty to "recontact" to get the required information under certain circumstances:

> Section 416.912(e)(1) provides that a medical source will be recontacted for purposes of clarification "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." However, the language in Section 416.912(e)(1) is preceded by the following qualification: recontact will proceed if "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." This is an important prerequisite.

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008).

The opinions of state agency medical and psychological consultants may also be entitled to significant weight:

> Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." State agent opinions merit significant consideration as well.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Other sources can be used to show the severity of an impairment and how it affects the claimant's ability to work. *Oliva*, 2011 U.S. Dist. LEXIS 98267 at *19. These sources include: 1) medical sources not listed in the acceptable sources list, including licensed clinical social workers and therapists, and other non-medical sources. *Douglass v. Astrue*, Civ. No. 10-1152, 2010 U.S. Dist. LEXIS 127182, at *13 (E.D. Pa. 2010). When conflicting medical opinions exist in the record, the ALJ may choose which opinion to credit, but must provide the rationale for their decision. *Diaz v. Comm'r of Soc. Sec*, 577 F.3d 500, 505-06 (3d Cir. 2009).

Medical reports consisting of only "check-the-box" selections are considered weak evidence. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The diminished evidentiary

10

value of these reports arises because they are not supported by thorough written reports and without such reports, the reliability of the findings is suspect. *Id.* (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)).

In this case, substantial evidence of record supports the ALJ's decision to afford more weight to Dr. Banks' opinion. First, many of the conclusions put forth by Plaintiff in an effort to sustain her burden were identified in Ms. Faust's "Mental Impairment Questionnaire." (R. 507-510.) This questionnaire, however, consists mainly of check-the-box forms, which as stated in *Mason*, have suspect reliability. (R. 507-10.) Although additional space was provided on the form and Ms. Faust made treatment notes in that space, not every finding is supported by her notes. For example, in the "Mental Abilities and Aptitudes Needed to do Unskilled Work" check list, Ms. Faust checked off that Plaintiff has "no useful ability to function" with regard to her ability to "make simple work-related decisions." (R. 508.) However, none of Ms. Faust's notes mention Plaintiff's ability in this area. Instead, they pertain—in large part—to Plaintiff's relationship with her boyfriend.

Second, Dr. Banks' opinion was entitled to more weight because the requirements of Social Security Ruling 96-6P were met. In forming an opinion in this matter, Dr. Banks reviewed the relevant medical record. (R. 104-05.) She also reviewed the report from Dr. Masey, a specialist in Plaintiff's impairment, which provided more detailed and comprehensive information. (R. 105.) As such, Dr. Banks' opinion can be given greater weight than treating or examining sources, thereby justifying the ALJ's treatment of her opinion. In contrast, Ms. Faust, as a social worker/ therapist, falls under the "other medical sources" classification and is not entitled to similar credibility. *See Yensick v. Barnhart,* 245 F. App'x 176, 181 (3d Cir. 2007) (noting that although an ALJ "may also consider other opinions about a claimant's disability

from persons who are not deemed 'acceptable medical sources,' such as a therapist who is not a licensed or certified psychologist[,] [a] treating therapist's opinion is not entitled to controlling weight.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999)).

Plaintiff also asserts that if information was missing, the ALJ had a duty to recontact Ms. Faust for further clarification. However, no such duty existed because the evidence the ALJ considered from other medical sources was adequate for her to determine whether or not Plaintiff was disabled in this case. *See Johnson*, 529 F. 3d at 205.

Lastly, Plaintiff asserts that her activities of daily living and the effect of her medication should not be used as reasons for discounting Ms. Faust's opinions. Assuming *arguendo* this was the case, enough substantial evidence still remained to support the ALJ's decision and she did not err in attributing greater weight to Dr. Banks' opinion.

### C.  Substantial Evidence Supports the ALJ's Credibility Findings

Next, Plaintiff objects to the ALJ's credibility determinations. It is well established that neither this Court nor the appellate court is "permitted to weigh the evidence or substitute [its] conclusions for those of the ALJ [and] the Commissioner's factual findings [must be upheld] if they are supported by substantial evidence in the record." *Knight v. Barnhart*, 123 F. App'x 53, 54 (3d Cir. 2005) (internal citations omitted). As explained above, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 54-55 (internal citation omitted).

Plaintiff first takes issue with the ALJ's characterization of the treatment Plaintiff received as "relatively conservative in nature" and the Magistrate's confirmation of same. (R. 21, ECF No. 6-2 at 22.) Review of the ALJ's opinion in conjunction with this Court's review of

the Administrative Record *in toto*, clearly demonstrates that the language relied upon by Plaintiff has been offered out of context and her argument is without merit.

The ALJ considered Plaintiff's hospitalization, expressly discussing same in the context of treatment records and the effectiveness of medication regiments. (R. 21-22, ECF No. 6-2 at 22-23.) The record speaks for itself; Plaintiff's assertion that "[a]n ALJ cannot override treating specialists who provide treatment consisting of therapy and medication" is a misstatement of what actually occurred in this case. *See* R. Ex. 4F, ECF No. 6-7 at 99-100, 103. The ALJ's determinations are wholly supported by substantial evidence of record; treatment and medication progress notes from Berkshire Psychiatric & Behavioral Health Services—including treating therapist April Faust's notes— repeatedly document the fact that Plaintiff felt better when she was on her medications and worse when she was not. (R. Ex. 4F, ECF No. 6-8 at 99-104; Ex. 11F, ECF No. 6-8 at 47-48, 50, 52-53; Ex. 14F, ECF No. 6-8 at 83-84, 86.) Ms. Faust's records also indicate that Plaintiff felt better when she was working and was not "bored," and that Plaintiff was worried about her financial status if she wasn't approved for Disability. (R. Ex. 8F, ECF No. 6-8 at 5; Ex. 11F, ECF No. 6-8 at 39.) Review of the records also clearly indicate that Plaintiff 's reported episodes of feeling "depressed" and "manic" were primarily related to the status of her relationship with her boyfriend. (R. Ex. 8F, ECF No. 6-8 at 4-5, 10-14; Ex. 11F, ECF No. 6-8 at 40, 42, 48, 51, 54; Ex. 14F, ECF No. 6-8 at 84-85.) In view of the foregoing, the ALJ's characterization of Plaintiff's treatment was in no way improper, as it was completely supported by substantial evidence of record.

Next, Plaintiff claims the Magistrate "refers to Reichert's daily activities to refute her credibility." (Objs. 10. ECF No. 15 at 10.) As a preliminary matter, the court does not "refute" anything –that is the role of counsel. Instead, the court assesses the record and in this case,

determines whether or not substantial evidence supports the ALJ's decision. The Magistrate did exactly that. Again, Plaintiff's argument is offered out of context and is without merit.

The record in this matter consisted of more than 600 pages of medical/treatment records, transcripts, and administrative documents. Contrary to the situation in the *Reider* case offered by Plaintiff in her briefing on objections, the ALJ in this case did not "rel[y] heavily on the fact that claimant had testified she did household activities and occasionally involved herself in recreational activities." (Objs. 11, ECF No. 15 at 11) (citing *Reider v. Apfel*, 115 F. Supp. 2d 496, 504-05 (M.D. Pa. 2000)) . Instead, the ALJ's assessment thoroughly discussed the fact that in addition to Plaintiff's own testimony and written answers to questions pertaining to her ability to perform daily activities, evidence from Plaintiff's mother and relevant medical/treatment documentation confirmed same. In particular, Plaintiff noted that she prepares her own meals daily, does laundry, cleans, shops, "hangs" with family and friends, plays games, talks, goes to movies, and participates in Bible study. (R. 7E, ECF 6-6 at 42-44.) Although Plaintiff indicates that it is more difficult for her to do these things when she in manic, the record clearly bears out the fact that if she takes her medication as prescribed, she doesn't become manic. (R. 5E, ECF No. 6-6 at 28; R. 17E, ECF No. 6-6 at 84.) Moreover, the ALJ specifically spoke to Plaintiff's credibility when she opined that "[t]he claimant's description of symptoms has been quite vague and general, lacking the specificity that might otherwise make it more convincing." (R. 23, ECF No. 6-2 at 24.)

As previously noted herein, "[t]he ALJ may also consider other opinions about a claimant's disability from persons who are not deemed 'acceptable medical sources,' such as a therapist who is not a licensed or certified psychologist. A treating therapist's opinion is not entitled to controlling weight, however." *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir.

2007) (citations omitted). In this case, the record demonstrates that the ALJ considered information provided by both Plaintiff and her therapist, and accorded same the proper weight. In forms completed by Plaintiff herself, she indicates that in her capacity as a daycare assistant, she supervised children, taught them colors, numbers, the alphabet, made lunches for them, and helped the older (school-aged) children with their homework . . . among other things. (R. Ex. 6E, ECF No. 6-6 at 36.) School records indicate that when assessed in 10th grade, Plaintiff was scoring above 80% in Math (82%), World History (87%), Biology (84%), Business Law (89%) and Physical Education (87%), and scored 78% in English. (R. 1F, ECF No. 6-7 at 40.) Plaintiff confirms this for purposes of a Neuropsychological Evaluation, in which it is noted that Plaintiff "described her grades throughout high school as "A's, B's and C's." (R. 2F, ECF No. 6-7 at 47.) The record also demonstrates that the ALJ expressly considered Plaintiff's difficulty with certain tasks in daily living and social functioning. (R. 19, ECF No. 6-2 at 20.)

As was recently discussed by the Third Circuit,

> We have no trouble concluding that the ALJ's decision to deny benefits was supported by the record. The ALJ considered [the claimant's] physical activities as one relevant consideration among many others in its analysis. Although [the claimant] offered testimony of his pain, social anxiety, and inability to concentrate, his daily activities and much of the medical evidence tended to undermine his position. For example, [the claimant] drives, volunteers, does work around the house, and has several hobbies. These activities require at least some physical exertion and mental concentration. Moreover, much of the medical evidence indicated that, although he had restrictive lung disease, his physical condition was generally normal. In addition, a vocational expert testified that someone with [the claimant's] limitations could obtain an unskilled sedentary job. The ALJ took all this evidence into account, made credibility determinations, and reasonably concluded that, when not abusing alcohol, [the claimant] is not disabled.

*Celento v. Comm'r Soc. Sec.*, 613 F. App'x 205, 206-207 (3d Cir. 2015).

Plaintiff further objects to ALJ's treatment of her testimony regarding side effects from medication. An ALJ's decision is not supported by substantial evidence where there is no

15

indication that they considered side effects experienced by a claimant due to medications. *Stewart v. Secretary of Health, Educ., & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). In this case, the ALJ clearly considered same. (R. 19 & 21, ECF No. 6-2 at 20 & 22.) At both the hearing and during a few medical/psychological consultations, Plaintiff complained of dizziness and drowsiness. (R. 52-53, ECF No. 6-2 at 53-54; R. 292, 297, ECF No. 6-6 at 47, 51; R. 506, 516, ECF No. 6-8 at 33, 44.) However, substantial evidence similarly demonstrates that Plaintiff did not experience side effects from the medication. (R. 277, ECF No. 6-6 at 31; R. 476, ECF No. 6-8 at 3; R. 579, ECF No. 6-8 at 6; R. 480, ECF No. 6-8 at 7; R. 481, ECF No. 6-8 at 8; R. 482, ECF No. 6-8 at 9; R. 514, ECF No. 6-8 at 41; R. 518, ECF No. 6-8 at 46; R. 523, ECF No. 6-8 at 50; R. 556, ECF No. 6-8 at 83; R. 557, ECF No. 6-8 at 84.)

Moreover, as discussed above, the record is replete with evidence to substantially show that she was markedly better when on the medication, than off. Accordingly, the ALJ did not err in finding Plaintiff's statements concerning side effects "not entirely credible" and concluding as he did that said medications—when taken appropriately—"have been relatively effective in controlling the claimant's symptoms." (R. 21- 23, ECF No. 6-2 at 22-24.)

### D. Substantial Evidence Supports the ALJ's RFC Assessment

Lastly, Plaintiff objects to the Magistrate's R&R with regard to the ALJ's RFC[3] assessment. (Objs. 12, ECF No. 15 at 12.) Plaintiff's primary contention with regard to this issue is that the limitations the ALJ imposed on the work Plaintiff could perform "do not account for Reichert's difficulty with concentration, persistence, or pace." (Objs. 12, ECF No. 15 at 12.) Plaintiff is simply incorrect.

---

[3] As noted at the outset, "RFC" refers to Residual Functional Capacity.

During Plaintiff's hearing, the ALJ posed several hypotheticals to vocational expert William Tanzey.  In doing so, the ALJ asked about the type of work that would be available to an individual who was "capable of following simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes and no work *at fixed production pace, work pace*."  (R. 86) (emphasis added).  Mr. Tanzey responded that under these circumstances, a person could perform as a laundry worker, housecleaner and garment folder.  (R. 86.)  This same line of questioning has been deemed wholly appropriate with regard to individuals who possess moderate limitations in concentration, persistence and pace.  *See Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) (rejecting a plaintiff's claim that "delusions and hallucinations support[s] a finding of greater limitation" than the ALJ's finding of "moderate limitations in concentration, persistence, or pace," in light of substantial evidence that he "had the ability to read, watch television, and play video games." The court based its conclusion on the fact that "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."); *Menkes v. Astrue,* 262 F. App'x 410, 412 (3d Cir. 2008) ("Having previously acknowledged that [the plaintiff] suffered moderate limitations in concentration, persistence and pace, the ALJ also accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'").  Accordingly, Plaintiff's final objection is without merit.

## V. CONCLUSION

For the reasons set forth hereinabove, Plaintiff's Objections to the Magistrate's R&R shall be overruled.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II  J.